**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

Brandon International, Inc.,  )
  )
    Plaintiff and Counterclaim Defendant,  )
  )
-vs-  )  2:07-cv-0175
  )
Clark-Reliance Corporation,  )
  )
    Defendant and Counterclaimant.  )

AMBROSE, Chief District Judge.

### OPINION AND ORDER

In this breach of contract case, Defendant/Counterclaimant, Clark-Reliance Corporation, ("Clark"), filed an motion for summary judgment arguing that no enforceable contract exists between itself and Plaintiff, Brandon International, Inc. ("Brandon"), and thus, summary judgment should be granted as a matter of law. I disagree and decline to enter summary judgment for the reasons set forth below.

### 1. Factual & Procedural History

The facts are undisputed unless otherwise noted.

In April of 2006, Mark Chiarelli, President of Brandon, contacted a broker, Richard Ames, and requested his help in finding a small business for Plaintiff to buy. (Docket entry 46, fact no. 6). In July of 2006, Defendant hired Mr. Ames as its broker for the sale of one of its divisions, HYCOA. (Docket entry 46, fact no. 7). Subsequently, Mr. Ames contacted Plaintiff about the opportunity to purchase HYCOA. (Docket entry 46, fact no. 8). On August 11, 2006, Plaintiff requested some additional information about HYCOA from Defendant's CFO, which resulted in Plaintiff requesting

1

that Defendant's Mazak machine be included in the deal. (Docket entry 46, fact no. 9). Defendant agreed and the Mazak machine remained part of the deal until sometime in December of 2006. (Docket entries 46, 48 and 53, fact no. 10).

On August 16 2006, Plaintiff sent a letter of intent ("LOI") to Mr. Ames suggesting a sale of all of HYCOA's assets. (Docket entry 46, fact no. 11). The LOI specifically stated that Plaintiff and Defendant would execute a "purchase agreement." (Docket entry 47-2, p. 55 and docket entry 47-3, p.1-2). The LOI also stated that no party would be bound until a definitive purchase agreement was executed. (*Ibid).* Both Plaintiff and Defendant signed the LOI. (*Ibid).*

Following the execution of the LOI, the parties exchanged several offers and counteroffers relating to the price of the acquisition of HYCOA's assets. (Docket entry 46, fact nos. 18-20). In September of 2006, Plaintiff and Defendant signed an "Offer to Purchase." (Docket entry 47-3, p. 3). This September Offer to Purchase contained a statement written in all capital letters, which had previously read, "This is a legally binding document, read it carefully." However, one or both of the parties crossed out this statement. (*Ibid*.)

About one month after signing this document, the parties revised the September Offer to Purchase and executed a second Offer to Purchase, (*see*, Ex. A to Plaintiff's complaint at docket entry 1, hereinafter " the October Offer to Purchase"). The October Offer to Purchase incorporated the handwritten notations found on the September Offer to Purchase and included some new handwritten notes. (*Ibid*.) Importantly, the October Offer to Purchase lacked the sentence, "[t]his is a legally binding document, read it carefully" which had been previously crossed out in the September Offer to Purchase. (*Ibid.*) However, the October Offer to Purchase contained the following sentences above the respective parties' signature lines: "P[urchaser] hereby agrees to buy

2

on the terms set forth above" and "[t]he Seller agrees to sell on the terms set forth above." (*Ibid*.) The October Offer to Purchase also contained a merger clause which stated:

> This document constitutes the entire understanding of the parties and there are no oral agreements, understandings, or representations relied upon by the parties. Any modifications must be in writing and signed by the parties.

(*Ibid*.)

The October Offer to Purchase contained an "Amendment/ Addendum" which indicated that the purchase price of $250,000 would be paid for "substantially all the assets of HYCOA[,]" specifically excluding "any equipment that is solely used in the manufacture of JR-33 family of transfer valves." (*Ibid*.) The Amendment/Addendum also indicated that by the closing date,[1] Plaintiff would pay a separate sum for "inventory." (*Ibid*.) This amount due for inventory would be determined based on a formula set forth in the Amendment/Addendum. (*Ibid*.)

After the parties executed the October Offer to Purchase, Plaintiff asked Defendant's Broker (Ames) if he had spoken to his attorney about drafting a "formal agreement based on the [October Offer to Purchase] agreement..." (Docket entry 47-3, p. 11). In November, Ames' attorney prepared and circulated a draft asset purchase agreement, bulk sale notice, business sales agreement and covenant not to compete. (Docket entry 46 and 48, fact no. 47). Although both parties started to revise the draft asset purchase agreement, neither party ever signed it. (Docket entry 46, fact nos. 49-50, 52).

On December 6, 2006, Defendant sent Plaintiff a list of the equipment Defendant intended to retain after the closing and Plaintiff objected to the retention of most of the equipment on the list.

---

[1] The October Offer to Purchase indicated a closing date of November 30, 2006, but subsequently, the parties agreed that the closing could be postponed to December 15, 2006.

3

(Docket entry 46, fact nos. 54-55). Shortly thereafter, the deal between Plaintiff and Defendant seriously deteriorated, and the parties disagree as to the cause. Plaintiff claims the deal faltered when Defendant became aware of the value of the Mazak machine (approximately $425,000) and tried to retain it, or, in the alternative, have Plaintiff agree to increase the purchase price by an additional $250,000. (Docket entry 48, fact nos. 63, 65). Conversely, Defendant argues that Plaintiff wanted to reduce the purchase price to $100,000. (Docket entry 46, fact nos. 63, 65). Plaintiff concedes that it offered to reduce the equipment purchase price to $100,000, but only after it learned that Defendant was going to keep the Mazak machine. (Chiarelli depo. P. 132, 219).

On December 19, 2006, Plaintiff notified Defendant's broker that "the deal was off." (Docket entry 46, fact no. 80). Defendant then sent a termination letter to Plaintiff confirming the termination of their deal. (Docket entry 46, fact no. 81).

Following the collapse of the deal, Plaintiff brought this action for breach of contract, breach of the implied warranty of good faith and fair dealing, and specific performance. (Docket entry 1). Defendant moves for summary judgment claiming the parties never had a meeting of the minds, never reached an agreement on price, and never reached agreement on the assets to be sold, and thus concludes that no enforceable contract ever existed. (Docket entry 45, p. 2). Plaintiff counters by arguing that the parties' October Offer to Purchase constitutes a complete expression of their agreement and if any ambiguity exists regarding whether the parties intended to be bound by the October Offer to Purchase, then this presents a question of fact for the jury to decide. (Docket entry 49, p. 3).

## 2. Standard of Review

Under F.R.Civ.P. 56, summary judgment shall be rendered if the pleadings, depositions,

4

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c) (2008). An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 (3d Cir. 2001) *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[T]he existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (quoting, *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)).

## Discussion

In its brief in support of its motion for summary judgment, Defendant raises two arguments: (1) there was no "meeting of the minds" so no contract exists, and (2) the terms of the alleged bargain are too vague to be enforced. Plaintiff disagrees, claiming the heart of this case involves the intent of the parties which is a question of fact for the jury to decide. Plaintiff also contends the terms set forth in the October Offer to Purchase are sufficient.

The parties agree that Pennsylvania substantive law controls.[2] It is well established that a contract comes into being once the parties have reached a meeting of the minds on the essential

---

[2] Both parties relied on Pennsylvania case law applying the common law theories of contract law. Neither party discussed the applicability, if any, of Article 2 of the Uniform Commercial Code. Therefore, I will not address any theory or defense that could have been advanced in accordance with Article 2 of the UCC.

5

terms and have manifested the intent to be bound by those terms. *Forte Sports, Inc. v. Toy Airplane Gliders of America, Inc.*, 371 F. Supp. 2d 648, 649 (E.D. Pa. 2004), citing, *Schulz v. U.S. Boxing Association*, 105 F.3d 127, 136 (3d Cir. 1997).

The Third Circuit in *Schwab v. PennSummit Tubular, LLC*, 523 F.3d 134 (3d Cir. 2008), relying on Pennsylvania law, held that:

> [c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties, as embodied in the written agreement. Courts assume that a contract's language is chosen carefully and that the parties are mindful of the meaning of the language used. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*Schwab,* 523 F.3d at 137, *citing, Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Cmwlth. 2005). The *Schwab* Court also noted that in Pennsylvania:

> [a] contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The court, as a matter of law, determines the existence of an ambiguity and interprets the contract, whereas the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact.

*Schwab,* 523 F.3d at 137, *citing*, *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (Pa. 1986).

In *Prudential Ins. Co. of Am. v. Prusky*, 473 F. Supp. 2d 629 (E.D. Pa. 2007), the district court relying on Third Circuit case law held, that "the strongest external sign of agreement between contracting parties is the words they use in their written contract." *Prudential,* 473 F. Supp. 2d at 635, *citing, Mellon Bank v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1009-10 (3d Cir. 1980) (applying Pennsylvania law). "Therefore, '[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone.'" *Prudential,* 473 F. Supp. 2d at 635*, citing, Mellon* 619 F.2d at 1010. The *Prudential* court went on to recite the Third Circuit's standpoint in *Bethlehem Steel* on

6

the matter:

> A court should be equally cautious in deciding, from its own point of view, that a contract is clear. The Third Circuit has explained that to decide whether a contract is ambiguous, the court must consider "…the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning."

*Prudential,* 473 F. Supp. 2d at 635, *citing, Bethlehem Steel Corp. v. United States*, 270 F.3d 135, 139 (3d Cir. 2001). A court, therefore, may look to the parties' course of conduct to determine whether a contract is ambiguous. *Prudential Ins. Co. of America. v. Prusky*, 413 F. Supp. 2d 489, 494 (E.D. Pa. 2005), *citing, Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736, 741 n.6 (1978).

As a matter of law, I must give effect to the intent of the parties as embodied in the fully executed October Offer to Purchase document. When deciding whether the October Offer to Purchase is ambiguous or not, I must consider not only the language in the document, but the meanings suggested by counsel and the extrinsic evidence offered in support of each interpretation. The extrinsic evidence may include things like the bargaining history of the parties and the parties' course of conduct. In this case, the extrinsic evidence illustrates the ambiguities.

Defendant contends that both parties knew and agreed that the October Offer to Purchase was <u>not</u> a binding contract. In support of this position, Defendant primarily relies on the following evidence:

- The October Offer to Purchase states the parties "intend" to carry out the contemplated transaction;

- The language stating "this is a legally binding document" was removed from the October Offer to Purchase;

7

- Email relating to the "non-binding" nature of the October Offer to Purchase or referencing it as a "pre-agreement" was sent from Defendant to its broker, Mr. Ames;

- In an email from Defendant's broker to Defendant, the broker states he told Plaintiff the October Offer to Purchase was not a binding agreement, and he implies that it was Plaintiff who requested the October Offer to Purchase be non-binding;

- Plaintiff's email inquiry to Defendant's broker asking if the broker's attorney had drafted a "formal agreement" based on the October Offer to Purchase; and

- Plaintiff knew the broker's attorney had drafted an Asset Purchase Agreement.

Furthermore, Plaintiff admits: (1) the LOI was non-binding, and (2) the parties agreed to eliminate the language, "this is a binding document," from the October Offer to Purchase. Plaintiff also concedes another agreement (the Asset Purchase Agreement) was being drafted by Defendant's broker's attorney (with the parties' input) when the deal fell apart.

This evidence favors Defendant's argument that no binding, enforceable agreement existed and both parties knew it. However, on its face, the October Offer to Purchase contains a merger clause (quoted above) as well as declarations located immediately above the signature lines which clearly indicate the parties' intent to bind one another to the terms and conditions found within that document. In addition, the parties' conduct shows both parties taking the steps to satisfy the terms of the October Offer to Purchase by the closing date of December 15, 2006. For example:

- Plaintiff paid, and Defendant accepted $20,000 as a deposit as per the October Offer to Purchase;

- On October 31, 2006, Defendant sent an email to its broker forwarding monthly book and sales backlog data and acknowledged that a HYCOA customer wanted to speak with the

8

"new owner"; and

- On December 7, 2006 Defendant sent an email to its broker suggesting the December 15, 2006 date would be the time to finalize inventory values (as per the formula found in October Offer to Purchase).

Thus, some of the parties' conduct and the seemingly binding statements set forth in the October Offer to Purchase, when compared to some other conduct of the parties and the bargaining history prior to executing the October Offer to Purchase, creates an ambiguity with respect to the parties' intent. Applying the law to the facts of this case, the question of whether the parties intended to be bound by the Ocotber Offer to Purchase is a question of fact for a jury to determine. Accordingly, summary judgment cannot be granted.

The same holds true with respect to Defendant's second argument alleging the terms of the agreement are too vague to be enforced. One of the main questions is whether the parties intended to include the Mazak machine as the deal drew to a close. While there is extrinsic evidence which supports its inclusion, language found in Amendment/Addendum to the October Offer to Purchase make its inclusion in this deal less clear.[3] This ambiguity does not give rise to an unenforceable contract. Rather, the jury, as fact-finder, must resolve this conflicting evidence which creates this ambiguity. For all of these reasons, I am denying the Defendant's motion for summary judgment.

---

[3] Defendant contends that the Mazak machine, which could be used to make the JR-33 transfer valves, was excluded by the language found in the Amendment/Addendum. Plaintiff disagrees and suggests that the parties intended to include the Mazak machine given its inclusion in discussion before the LOI was signed, the actions of parties subsequent, and the language in the October Offer to Purchase Amendment/Addendum.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Brandon International, Inc. | ) |
| | ) |
| Plaintiff and Counterclaim Defendant, | ) |
| | ) |
| -vs- | ) 2:07-cv-0175 |
| | ) |
| Clark- Reliance Corporation, | ) |
| | ) |
| Defendant and Counterclaimant. | ) |

## ORDER OF COURT

And now, this 25th day of June, 2008, for reasons set forth in the accompanying Opinion, the Defendant's motion for summary judgment is denied. A pretrial conference has been scheduled for July 21, 2008 at 10:00 a.m.

BY THE COURT:

s/ Donetta W. Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge